UNITED STATES of America, Appellant,

v.

Kevin CAMISA, Defendant–Appellee.

No. 1145, Docket 91–1688.

United States Court of Appeals,
Second Circuit.

Argued May 4, 1992.

Decided July 21, 1992.

Thomas D. Anderson, Asst. U.S. Atty., D. Vermont (Charles A. Caruso, U.S. Atty. and David V. Kirby, Chief, Crim. Div., of counsel), for appellant.

Robert I. Kalina, New York City (Gravel & Shea, Robert O'Neill, Burlington, Vt., of counsel), for defendant-appellee.

Before: PRATT, MAHONEY, and McLAUGHLIN, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

An apparent shortage of experienced criminal defense lawyers in Burlington, Vermont produced this case in which the government, dissatisfied with the district court's resolution of a possible conflict of interest problem, appeals from an order of the United States District Court for the District of Vermont, Fred I. Parker, Chief Judge. Because we conclude that the order sought to be appealed from is not appealable, we dismiss the appeal.

Along with six other defendants, Camisa was indicted in April 1991 on a single drug count, expanded to three counts in May 1991 by a superseding indictment. A second superseding indictment, filed October 16, 1991, reduced the defendants to Camisa and one other, but increased the charges to one conspiracy and two substantive drug counts, plus a fourth count for forfeiture of Camisa's business.

Camisa's retained counsel, Robert I. Kalina of New York City, unsuccessfully sought to associate with several Burlington criminal lawyers as local counsel, but each one indicated that a conflict of interest precluded his working on the case. Finally, on June 3, 1991, Kalina retained Robert O'Neill as local counsel for Camisa. Before accepting this representation, O'Neill contacted Thomas D. Anderson, assistant United States Attorney of the United States Attorney's Office in Burlington, and inquired whether the office had any objection to his representing Camisa—*i.e.*, whether he had a conflict of interest. Anderson informed O'Neill that his representation would not result in a conflict. Three months later, however, Anderson brought to O'Neill's attention that the government had listed as one of its 35 potential witnesses Theodore Harris, who was a convicted cocaine dealer serving a ten-year sentence and who had been and still was represented by O'Neill. The government wanted to use Harris's testimony of a prior drug deal with Camisa possibly as evidence of knowledge or intent, and thus would urge its admissibility under Fed.R.Evid. 404(b), or possibly, in

the event of a conviction, as relevant conduct to be weighed under the sentencing guidelines.

At an October 17, 1991, status conference, the conflict problem was presented to Chief Judge Parker, who sought to bring the matter to a head by directing the government to move to disqualify O'Neill.

After a hearing on November 25, 1991, the district court denied the motion to disqualify O'Neill. Acknowledging that its ruling might require exclusion of Harris's testimony, the court discussed with counsel possible alternatives, but determined that it would not at that time resolve the problem, either by examining Camisa as to whether he would waive the conflict, or by determining the relevance of Harris's proposed testimony.

Characterizing the court's ruling as a pretrial order excluding evidence, the government brought this interlocutory appeal under 18 U.S.C. § 3731.

We think the government misinterprets the district court's ruling. The only clear-cut decision made by the court was to deny what the government originally and accurately had labeled as a "motion to disqualify local counsel". This was the only motion then before the court. The Supreme Court, noting the rarity of exceptions to the final judgment rule in criminal cases, ruled that an order in a criminal case granting a motion to disqualify is not appealable in *Flanagan v. United States*, 465 U.S. 259, 270, 104 S.Ct. 1051, 1057, 79 L.Ed.2d 288 (1984). We do not hesitate to hold, correspondingly, that an order *denying* such a motion is unappealable. *See, e.g., United States v. White*, 743 F.2d 488, 493–94 (7th Cir.1984) (district court's order denying government's motion to disqualify defense counsel due to his representation of a government witness held not appealable); *United States v. Caggiano*, 660 F.2d 184, 191 (6th Cir.1981) (court had no jurisdiction to hear appeal from denial of motion to disqualify prosecutors in criminal case).

Nor does the district court's ruling become appealable because it may require a future ruling that will exclude evidence. The government's theory is that the only alternative to disqualification of O'Neill will be to preclude Harris from testifying. While Judge Parker at one point during the hearing on the motion predicted that "the practical implication of [denying the motion to disqualify O'Neill] is that the Harris testimony is almost certainly not going to be available at trial", this did not constitute a ruling to exclude Harris's testimony, for he did not "ma[ke] it clear that he was making a 'decision'" within the meaning of § 3731. *United States v. Flores*, 538 F.2d 939, 943 n. 3 (2d Cir.1976). As we noted in *Flores*, not every

> comment by a trial judge during a pre-trial hearing, stating in advance what evidence he believes he will exclude, will make his statement a "decision" for purposes of § 3731.

*Id.*

The parties do not dispute that if Harris testifies at trial and, if the court fails to develop some form of remedial measure, a conflict of interest will arise from O'Neill's representation of both Camisa and Harris. The contours of this ethical conflict center on the potential use of confidential attorney-client information that O'Neill may have accumulated through his ongoing representation of Harris. The Vermont Code of Professional Responsibility (CPR), Disciplinary Rule 5–105(B) (1991), forbids a lawyer's "multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests." O'Neill's duty to represent zealously the interests of Camisa, *see* Vermont CPR Ethical Consideration 7–39, inevitably will collide with his similar duty to represent Harris's interests if O'Neill assists with or performs the cross-examination of Harris.

Nevertheless, it is far from certain that O'Neill's participation as local counsel will be incompatible with Harris's testifying at the trial. In the first place, on this record it is not clear that Harris will be willing to testify, or, if willing, will have anything admissible to offer. Secondly, not until the

case is well developed at trial will the district judge be in a position to determine whether or not Harris's testimony, if proffered, would be admissible.

Thirdly, assuming that Harris's testimony would be admissible, Camisa's counsel has already represented to the court that a "Chinese wall" has been erected so as to "put [O'Neill] nowhere close to Mr. Harris" and his possible testimony. Thus, if Harris does testify, Kalina could handle objections on direct examination and all cross-examination of Harris; indeed, O'Neill could even be excluded from the courtroom during the testimony. *See, e.g., United States v. Cunningham,* 672 F.2d 1064, 1070 (2d Cir.1982), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). *See generally* Comment, *The Chinese Wall Defense to Law–Firm Disqualification,* 128 U.Pa.L.Rev. 677 (1980).

Finally, it is possible that Camisa and Harris may waive any possible conflicts and thereby permit O'Neill's full participation on behalf of Camisa. *See* Vermont CPR Disciplinary Rule 5–105(C) (client may waive potential conflict after full disclosure of the nature of the conflict); *In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977) (waiver possible when client is made aware of the potential threat to the protection of the client's interests, and court ensures client knowingly and intelligently chooses to proceed); *United States v. Curcio,* 680 F.2d 881, 888–89 (2d Cir.1982) (defendant should have time to fully reflect on decision to waive right to conflict-free counsel); *United States v. Jenkins,* 943 F.2d 167, 176 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 659, 116 L.Ed.2d 751 (1991).

It is precisely the uncertainty of how events may unfold at the trial that makes this interlocutory appeal impractical, undesirable, and, as we now rule, unavailable.

Appeal dismissed.